WOMEN'S EQUITY ACTION
LEAGUE, et al.

v.

Terrel H. BELL, et al., Appellants.

Kenneth ADAMS, et al.

v.

Terrel H. BELL, et al., Appellants.

Nos. 83–1516, 83–1590.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 27, 1984.

Decided Sept. 14, 1984.

David Jay Anderson, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Richard A. Levie, Atty., Dept. of Justice and Joseph E. diGenova, U.S. Atty., Washington, D.C., were on the brief, for appellants in Nos. 83–1516 and 83–1590.

Elliott Charles Lichtman and Margaret A. Kohn, Washington, D.C., with whom Joseph L. Rauh, Jr., Mary M. Levy, Marcia D. Greenberger, Stuart J. Land, Hadrian R. Katz and Coleman S. Hicks, Washington, D.C., were on the joint brief, for appellees in Nos. 83–1516 and 83–1590. John Silard, Washington, D.C., also entered an appearance for appellees Adams, et al. in No. 83–1590.

Before WILKEY and GINSBURG, Circuit Judges, and MAC KINNON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

This appeal was brought by several officers of the United States Government, including Terrel H. Bell, Secretary of the Department of Education; Harry M. Singleton, Assistant Secretary for Civil Rights of the Department of Education; Raymond Donovan, Secretary of the Department of Labor; and Ellen Shong, Director of the Office of Federal Contract Compliance Programs. They seek to overturn an injunction entered by the district court together with an underlying consent decree which they claim impermissibly intrude on their statutory and constitutional authority to manage and supervise their agencies' en-

forcement of various civil rights laws. In their briefs before this court they argue that the consent decree and injunctive enforcement must be vacated because, *inter alia,* the district court's orders violate fundamental principles of separation of powers, Brief for Appellees at 47; are unworkable and counter-productive, *id.* at 70; usurp legitimate management functions belonging to the executive branch, *id.* at 44; and fail adequately to take into account changed circumstances, *id.* at 31, 64. The appellants also assert that the district court's enforcement of the consent decree threatens to establish the district court as the "perpetual supervisor" of the appellants and their agencies, "effectively reversing the normal relations between the agency and court." *Id.* at 49, *quoting Adams v. Bell,* 711 F.2d 161, 166 (D.C.Cir. 1983).

In conjunction with this last argument, the appellants assert that this litigation has lost sight of the specific goals of the initial suit upheld in *Adams v. Richardson,* 480 F.2d 1159 (D.C.Cir.1973), and that due to subsequent actions in the district court "this proceeding no longer embodies a controversy between particular injured plaintiffs and the government." Brief for Appellants at 58. The appellants assert that the district court has attempted to effectuate its supervision of these agencies indefinitely by substituting new plaintiffs in this case without class certification in factual circumstances which "do not involve any particular injury" to the plaintiffs, and which may not be redressed by the relief sought in the litigation. *Id.* at 58 n. 57. These are serious charges; they are uniformly and vehemently denied by the appellees who see this case as a plain and simple failure by appellants to comply with a consent decree and court directions. Appellants' charges appear to raise at least two sets of questions about whether the current litigation constitutes a justiciable case or controversy; first, whether any of the plaintiffs have standing to prosecute this litigation; and second, whether the district court may have improperly allowed perpet-

uation of an action after the case or controversy initially entertained has expired.

■ We are obliged to consider on our own motion threshold Article III impediments to the initiation and maintenance of an action. Before we may reach the merits of a particular claim, we must be assured that these requirements are satisfied. *Glass Packaging Institute v. Regan,* 737 F.2d 1083 at 1087–1088 (D.C.Cir.1984). During the pendency of this appeal, the Supreme Court decided *Allen v. Wright,* —— U.S. ——, ——, 104 S.Ct. 3315, 3330, 82 L.Ed.2d 556 (1984), emphasizing this limitation on the power of federal courts to hear claims filed by persons challenging "the way in which government goes about its business" of enforcing the law.

In *Allen v. Wright* the Supreme Court pointedly admonished this court to pay close attention to standing doctrine as the Court has now clarified it in "suits challenging, *not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations. Such suits, even when premised in allegations of several instances of violations of law, are rarely if ever appropriate for federal-court adjudication.*" *Id.* at ——, 104 S.Ct. at 3329. (emphasis added). The Court elaborated this warning, stating:

"Carried to its logical end, ... [this] approach would have the federal courts as virtually continuing monitors of the wisdom and soundness of Executive action; such a role is appropriate for the Congress acting through its committees and the 'power of the purse'; it is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful governmental action." *Laird v. Tatum,* 408 U.S., [1] at 15 [92 S.Ct. 2318, at 2326, 33 L.Ed.2d 154].

. . . .

... When transported into the Art. III context, that principle ["that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs'"], grounded as it is in

the idea of separation of powers, counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm, but to seek a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties. *Id.* at ——–——, 104 S.Ct. at 3329–3330 (citations omitted).

■ These concerns, it seems to us, pervade the case at hand. The appellants have raised issues directly relating to the standing of the plaintiffs to maintain this action seeking broad and continued judicial superintendence of Executive Branch activity. They also suggest that the controversy may have become moot. In view of *Allen v. Wright*, these questions, grounded in the "pervasive and fundamental notion of separation of powers," *id.* at ——, 104 S.Ct. at 3325, must be resolved prior to any ruling on the merits of the appellants' arguments.

On the record before this court, we are unable to decide these issues in the first instance. Issues of unresolved fact may be implicated. Moreover, it is our general practice to allow full development and presentation in the district court of matters that surface initially on appeal. *See Dandridge v. Williams*, 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 1156–1157 n. 6, 25 L.Ed.2d 491 (1970) (appropriate to remand rather than deal with merits "[w]hen attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question"). We will therefore remand this case to the district court for a current ruling on whether standing and other threshold Article III requirements are satisfied.

In undertaking this review, the task of the district court will be to assess the factual status of the plaintiffs and intervenors in each of the cases comprising this extensive litigation to determine the existence of at least one plaintiff asserting each claim who is able to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,*

—— U.S. at ——, 104 S.Ct. at 3325. For instance, whether any plaintiffs are enrolled in educational institutions currently the subject of specific complaints of civil rights violations is one relevant consideration. *Id.* at ——, ——, 104 S.Ct. at 3320–3322. The relationship between a plaintiff's alleged injury and any compliance review procedures requested in the complaint or sought to be enforced is also relevant. These are merely two examples of the potentially germane considerations; overall, as the Supreme Court has held, the standing inquiry "requires careful judicial examination of a complainant's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* at ——, 104 S.Ct. at 3325.

We emphasize that we express no opinion on the issues this case presents—either the existence of standing or mootness bars to adjudication, or the legality of the consent decree or injunctive relief ordered by the district court. We note, however, that the "threshold" and "merits" issues involved are discrete. Although "case-or-controversy considerations ... shade into those determining whether the complaint states a sound basis for equitable relief," *id.* at 104 S.Ct. at 3330, a ruling on the threshold question of standing does not decide the issue whether certain relief granted after reaching the merits of a controversy would adversely implicate separation-of-powers limitations.

For the reasons stated, we vacate the 11 March 1983, orders from which this appeal has been taken and remand the case to the district court for consideration whether, in harmony with the case-or-controversy limitations articulated in *Allen v. Wright* and other relevant decisions, this action may proceed in court.