Arsenio E. SALVADOR,
Plaintiff-Appellant,

v.

William J. BENNETT, Secretary of
Education, Defendant-Appellee.

No. 85–2618.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 12, 1986.

Decided Aug. 21, 1986.

Arsenio E. Salvador, Chicago, Ill., for plaintiff-appellant.

Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before HARLINGTON WOOD, Jr., POSNER, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Arsenio Salvador, a student at Roosevelt University, has neurological conditions that make it hard for him to study and write. He filed two complaints with the Department of Education charging that Roosevelt had not modified its educational program and requirements to accommodate his disabilities, as he insisted the Rehabilitation Act of 1973, 29 U.S.C. § 790 et seq., requires. The Rehabilitation Act authorizes the Department to cut off federal funding of entities that violate the Act.

The Department's Regional Office for Civil Rights in Chicago concluded that Roosevelt had not violated the Act because Salvador had not brought his disabilities to Roosevelt's attention. Because Salvador had not given the University an opportunity to accommodate an identified disability, the hearing officer concluded, it would be inappropriate to award relief. See 34 C.F.R. § 104.44.

Salvador took an administrative appeal. The Department's Office of Civil Rights affirmed the hearing officer's conclusion. Salvador then filed this suit against the Secretary of Education, seeking $10,000 in damages and an injunction requiring the Secretary to investigate his complaints more completely and take action against Roosevelt. The district court concluded that there is no private right of action against the Secretary and dismissed the case for failure to state a claim on which relief may be granted. 622 F.Supp. 438 (N.D.Ill.1985). (The court also dismissed the case for want of jurisdiction, but because this case arises under federal law if under any, 28 U.S.C. § 1331 supplies jurisdiction if there is a basis for relief.)

The Rehabilitation Act does not explicitly create a private right of action. It was modeled after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., however, and an amendment to the Rehabilitation Act in 1978 adopts the reme-

dial provisions of Title VI. See 29 U.S.C. § 794(a)(2). Section 603 of Title VI, 42 U.S.C. § 2000d–2, provides in turn that "[a]ny department or agency action ... shall be subject to such judicial review as may be otherwise provided by law for similar action taken by such department or agency on other grounds." Section 603 itself provides for judicial review of the sort of administrative remedy Congress had in mind: "action ... terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement" of law. Any other administrative action is reviewable if review is "otherwise provided by law for similar action".

Although many courts have concluded that the Rehabilitation Act implicitly creates a private right of action against the recipients of federal funds, see *Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir.1977), and 622 F.Supp. at 441 n. 2 (collecting cases), no court has held that the Rehabilitation Act "otherwise provide[s] by law" for review of administrative decisions not to seek relief. We therefore ask as the statute directs whether review is provided for "similar action" under other statutes, to which the answer is no. A request for damages against administrative adjudicators is not supported by any statute, and adjudicators have absolute immunity when claims for damages are founded on the Constitution or state law. *Butz v. Economou*, 438 U.S. 478, 508–17 (1978). A request for damages against the Secretary of Education, who personally played no role in the administrative adjudication, also is not provided by any other statute. The Secretary is not vicariously liable for things done or not done by his subordinates. See *Walker v. Rowe*, 791 F.2d 507, 509 (7th Cir.1986); *Ustrak v. Fairman*, 781 F.2d 573, 575 (7th Cir.1986).

■ This leaves the request for an injunction. The Administrative Procedure Act makes much administrative action subject to review. See the discussion in *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). See also Cass R. Sunstein, *Reviewing Agency Inaction After* Heckler v. Chaney, 52 U.Chi.L.Rev. 653 (1985). This presumption does not apply to all administrative adjudications. See 5 U.S.C. § 554(a)(1), making the APA inapplicable to adjudications that are followed by de novo trials to a court. As a result, when the Equal Employment Opportunity Commission finds "no reasonable cause" after an administrative adjudication of a complaint under Title VII of the Civil Rights Act of 1964, there can be no judicial review of that decision, although the party aggrieved may file a de novo judicial action against the person he has charged with discrimination, 42 U.S.C. 2000e–5(f). *Stewart v. EEOC*, 611 F.2d 679, 682 (7th Cir. 1979). Cf. *Cannon v. University of Chicago*, 441 U.S. 677, 707 n. 41, 99 S.Ct. 1946, 1962–63 n. 41, 60 L.Ed.2d 560 (1979) (stating in dictum that there is a private right of action under Title VI against discriminators but none against the agency except to the extent the Administrative Procedure Act may authorize). Review generally is available only at the behest of a person ordered to act or desist as a result of the adjudication. Administrative inaction or stasis is reviewable rarely. Title VI follows this model: a person told to change his ways or to give up federal funding has review of the decision; a complainant told that the agency will do nothing, however, may get "review" not by suing the adjudicator but by pursuing the supposed offender. The general provisions of the APA do not undo this plan; to the contrary, § 554(a)(1) preserves it. See also *Stewart v. EEOC, supra.*

The only exception to this principle of which we are aware was stated in *Adams v. Richardson*, 480 F.2d 1159 (D.C.Cir. 1973) (en banc), which held that a court may order the federal officials administering Title VI to review cases in a particular way in order to achieve maximum enforcement. This decision has been questioned, see *Women's Equity Action League v. Bell*, 743 F.2d 42 (D.C.Cir.1984), and at all events the case dealt with programmatic rather than individual administration. The court assumed that but for the review at

hand, there would be no way to enforce Title VI. The case does not hold that particular administrative adjudications may be reviewed, and the Rehabilitation Act may be enforced by bringing suit against the person accused of discrimination. A private party has no legal interest in public enforcement such as the termination of funding. *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Leeke v. Timmerman,* 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); *Linda R.S. v. Richard D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). He must be content with his own remedies against the accused discriminator. *Adams* does not support a private right of action to review the Department's decision in Salvador's case.

AFFIRMED