Thomas E. SCHERER, Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Case No. 02–2075–JWL.

United States District Court, D. Kansas.

Jan. 9, 2003.

Thomas E. Scherer, Topeka, KS, Pro se.

Emily B. Metzger, Office of United States Attorney, Wichita, KS, Katharine S. Bunn, Office of the General Counsel, Columbia, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Thomas E. Scherer, proceeding *pro se*, brings this action seeking monetary, injunctive and declaratory relief[1] against the Department of Education, Secretary Paige, and various employees of the agency[2] (collectively the "Department") for allegedly violating the Freedom of Information Act ("FOIA"), obstructing justice, violating ethical rules of conduct, and failing to enforce civil rights legislation against the University of Missouri.

The Department filed a motion to dismiss Mr. Scherer's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2) and (b)(6) (Doc. 38) and the matter is before the court on that motion. The Department contends that the court should dismiss Mr. Scherer's FOIA claims because (1) he failed to exhaust his administrative remedies; (2) he pursues an exclusive remedy, punitive damages, that is not available under the act; and (3) he named

individual officers when FOIA permits suit against only the agency. As to Mr. Scherer's non-FOIA claims[3], the Department contends that the court should dismiss these claims because (1) the doctrine of sovereign immunity deprives the court of subject matter jurisdiction over the claims; (2) the court lacks personal jurisdiction over the employees in their individual capacities; and (3) Mr. Scherer has no private right of action under the statutes, regulations and executive orders that form the basis of his non-FOIA claims. The court grants the Department's motion and dismisses Mr. Scherer's complaint in its entirety. Specifically, Mr. Scherer's FOIA claims must be dismissed because he failed to actually exhaust his administrative remedies and he pursues a remedy that is not available under the Act. As to his non-FOIA claims, the relevant statutes do not provide him with an express or implied right of action.[4]

## BACKGROUND

In January of 2001, Mr. Scherer applied and was denied admission to the University of Missouri–Kansas City School of Law. On January 19, 2001, Mr. Scherer filed an administrative complaint with the Depart-

---

1. Specifically, in his prayer for relief, Mr. Scherer requests an award of punitive damages for the alleged FOIA violation, an order requiring the Department to conduct an investigation of the alleged ethical violations, a judgment declaring that the Department obstructed justice by failing to produce the FOIA documents, an order requiring the Department of Justice, Region VII Civil Rights Division to enforce all civil rights statutes against the University of Missouri, an order revoking all federal funding to the Curators of the University of Missouri, and a taxation of costs.

2. Mr. Scherer has named the Department of Education, Secretary Paige in his official capacity, and several officers of the agency in

their individual capacities. For clarity and simplicity, the court refers to the defendants collectively as the "Department," but differentiates among the specific defendants when necessary to clarify issues of personal jurisdiction and sovereign immunity.

3. The non-FOIA claims refer to Mr. Scherer's attempt to state a claim for obstruction of justice, violations of various ethics provisions, and the Department's failure to enforce civil rights legislation.

4. As explained within this order, Mr. Scherer's claims are also subject to dismissal against certain defendants under Federal Rules of Civil Procedure 12(b)(1), (2), and (6).

ment of Education, alleging that he was wrongfully denied admission.[5] Mr. Scherer also filed a complaint against the Curators of the University of Missouri in the Western District of Missouri.[6]

## I. The Freedom of Information Act Request

On November 16, 2001, Mr. Scherer requested, under FOIA, certain documents that he intended to use in his suit before the Western District of Missouri. Two days later, the Department's FOIA officer, defendant Maria Teresa Cueva, contacted Mr. Scherer to request additional information regarding his document requests. On December 5, 2001, Mr. Scherer contacted Ms. Cueva concerning the status of his request. On January 7, 2002, the Department produced a copy of the grant application Mr. Scherer requested under FOIA, but failed to produce the "assurances" he sought in the same request. Thus, Mr. Scherer, that very day, made his second FOIA request for "assurances." On February 21, 2002, Ms. Cueva offered to produce, via fax, the "assurances" that Mr. Scherer had requested.[7] One day later, Mr. Scherer filed the present action. To

remedy this violation, Mr. Scherer seeks an award of punitive damages.

## II. Non–FOIA Claims

In addition to the FOIA claim, Mr. Scherer contends that the Department obstructed justice by failing to produce the FOIA documents. Mr. Scherer alleges that he needed these documents as evidentiary exhibits in his federal action in the Western District of Missouri and that the Department intentionally refused to produce the documents to obstruct him in that proceeding. To remedy this violation, Mr. Scherer seeks a judgment declaring that the Department of Education obstructed justice by failing to produce the requested documents in a timely fashion.[8]

Apart from the claims related to the document requests, Mr. Scherer contends that the Department of Education, Office for Civil Rights ("OCR") for Region VII, cannot perform its functions because defendant Angela Bennett serves as both the director of OCR and as a member of the Board of Curators for the University of Missouri. Because the University of Missouri receives federal funds, conditioned upon compliance with federal civil rights statutes, Mr. Scherer alleges that Ms.

---

**5.** After failing to provide a consent form, the Department threatened to close Mr. Scherer's complaint. Mr. Scherer thereafter submitted his consent form and the Department assigned a new case number to his administrative complaint on July 25, 2001.

**6.** Plaintiff alleges that he originally filed his suit against the Curators of the University of Missouri in the District of Kansas, but the court transferred the case to the Western District of Missouri.

**7.** Mr. Scherer fails to clarify whether Ms. Cueva actually produced the assurances or whether she simply expressed an interest in producing them by fax. For example, Mr. Scherer alleges that "Ms. Cueva failed to timely produce those documents under the

FOIA or produce those documents at all." On the other hand Mr. Scherer, states that *"[r]egardless of production,* the FOIA violation does not disappear." (Emphasis added).

**8.** Mr. Scherer alleges that he filed a motion to compel the Curators of the University of Missouri to produce the grants and assurances in his action before the Western District of Missouri, but the court denied Mr. Scherer's motion on January 8, 2002. This allegation severely undermines his argument that any party obstructed justice by failing to produce the documents. Even so, because the motion to compel sought production from the Curators, while his FOIA request sought production from the Department, the court will analyze the obstruction of justice claim as applied to the Department.

Bennett's dual status as a board member and civil rights director creates a conflict of interest.[9]

To remedy this alleged violation of federal ethical guidelines, Mr. Scherer requests an injunction requiring the Department of Education to conduct an internal investigation into Ms. Bennett's dual employment status.

Finally, Mr. Scherer contends that the Department has failed to investigate adequately his administrative complaint, has failed to initiate an investigation of Ms. Bennett despite his request for such action, and has generally failed to enforce the civil rights laws against the University of Missouri. Mr. Scherer does not identify explicitly any statutory or legal authority that converts these allegations into a cognizable right of action. The court, however, could construe Mr. Scherer's allegations as an attempt to state a statutory or implied right of action under Title VI, Section 504 of the Rehabilitation Act, or the Americans with Disabilities Act.[10] To remedy this alleged violation, Mr. Scherer requests an injunction requiring the Department investigate increased federal funding to the University of Missouri and enforce the Civil Rights Act, the Rehabilitation Act, the Americans with Disabilities Act, and all Presidential Executive Orders against that institution. Additionally, Mr. Scherer requests that the court revoke all federal funding to the Curators of the University of Missouri "until such time as they can establish affirmative evidence that they comply with their voluntary assurances as a condition of receipt of federal funds."

## ANALYSIS

### I. Standard

██ When, as here, a plaintiff is proceeding *pro se*, the court construes his or her pleadings liberally and holds the pleadings to a less stringent standard than formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir.2001); accord *Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir.1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In other words, "[n]ot every fact must be described in specific detail, ... and the plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him should be allowed to amend his complaint." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir.1996) (quoting *Hall*, 935 F.2d at 1110). The liberal construction of the plaintiff's complaint, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," and "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.* (quoting *Hall*, 935 F.2d at 1110).

---

9. Mr. Scherer contends that Ms. Bennett has violated an executive order regarding ethics issued by President John F. Kennedy, but fails to specify the precise order. In his response to the motion to dismiss, Mr. Scherer analyzes the alleged violation under Executive Order 12674. As such, the court considers whether Mr. Scherer states a claim under this order as well as other ethical statutes and regulations applicable to the Department's employees.

10. The OCR is responsible for enforcing Title VI of the Civil Rights Act of 1964, as amended; section 504 of the Rehabilitation Act; and Title II of the Americans with Disabilities Act, as they apply to institutions of higher education and similarly situated state institutions that receive federal funds. As such, the Department has noted and Mr. Scherer has not disputed that his allegations pertaining to the Department's failure to enforce civil rights statutes are necessarily limited to these civil rights statutes.

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (quotation omitted).

## II. Analysis

Because the department's jurisdictional and substantive challenges do not uniformly apply to all of the defendants or to all of Mr. Scherer's claims, the court will simply evaluate all four potential claims separately to resolve the applicable jurisdictional and substantive issues.

## A. The Freedom of Information Act Claim

As noted above, Mr. Scherer asserts that the Department violated FOIA in failing to produce the assurances. The Department contends that these claims must be dismissed because Mr. Scherer failed to exhaust his administrative remedies as required under the Act. Additionally, the Department contends that the court must dismiss Mr. Scherer's request for punitive damages because the Act does not permit him to recover monetary damages. Finally, the Department argues that the FOIA claims must be dismissed as to the individual defendants because the Act permits suit only against the non-compliant department or agency.

## 1. Exhaustion of Administrative Remedies

The Department asserts that the court lacks subject matter jurisdiction over Mr. Scherer's FOIA claims because he did not allege that he exhausted his administrative remedies as required under the Act. "The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors." *Urban by Urban v. Jefferson County Sch. Dist. R–1*, 89 F.3d 720, 724 (10th Cir.1996).

Under FOIA, the Department is required to determine whether it will comply with a document request within 20 days,[11] notify the requesting party of his or her right to an administrative appeal, resolve any administrative appeal within 20 days, and notify the party of his or her right to judicial review if the appeal is denied. 5 U.S.C. § 552(a)(6)(A)(i) and (ii).[12] This

---

11. Department of Education regulations actually require the agency to determine whether records will be released or withheld "within 10 working days from date of receipt in the office having custody of the records." 5 C.F.R. § 5.51(d).

12. Specifically, this section provides:
 Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—(I) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of

provision "clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts." *Taylor v. Appleton,* 30 F.3d 1365, 1367–68 (11th Cir.1994) (citing *Dresser Indus., Inc. v. United States,* 596 F.2d 1231, 1238 (5th Cir.1979); *Hedley v. United States,* 594 F.2d 1043, 1044 (5th Cir.1979) (per curiam); *Spannaus v. United States Dep't of Justice,* 824 F.2d 52, 58 (D.C.Cir.1987); *In re Steele,* 799 F.2d 461, 465 (9th Cir.1986); *Brumley v. United States Dep't of Labor,* 767 F.2d 444, 445 (8th Cir.1985) (per curiam); *Stebbins v. Nationwide Mut. Ins. Co.,* 757 F.2d 364, 366 (D.C.Cir.1985); *Cazalas v. United States Dep't of Justice,* 660 F.2d 612 (5th Cir.1981)). Thus, Mr. Scherer is generally required to pursue the Department's administrative remedies set forth at 34 C.F.R. §§ 5.80 and 5.82 (permitting appeal to the Secretary of the Department of Education) to satisfy the actual exhaustion requirements of the Act. His failure to do so typically deprives the court of subject matter jurisdiction over the FOIA claim. *Barvick v. Cisneros,* 941 F.Supp. 1015, 1018 (D.Kan.1996) (citing *Trenerry v. I.R.S.,* 78 F.3d 598, 1996 WL 88459, at *1 (10th Cir.1996); *Lanter v. Dep't of Justice,* 19 F.3d 33, 1994 WL 75876, at *1 (10th Cir.1994); *Voinche v. F.B.I.,* 999 F.2d 962, 963 (5th Cir.1993)).

In addition to actual exhaustion, FOIA deems a request to be "constructively exhausted" if the agency fails to respond within the time period contemplated in § 552(a)(6)(A)(i) and (ii). 5 U.S.C. § 552(a)(6)(C)(i) (providing that a request-

ing party "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph"); *see also Taylor,* 30 F.3d at 1368 (noting that when the agency has not responded within these statutory time limits, the requester may bring suit). The constructive exhaustion provision, however, is not without limit and the agency can cure its failure to respond within the statutory period by producing the requested documents before the requestor files suit in district court. The D.C. Circuit has explained:

> 5 U.S.C. § 552(a)(6)(C) permits a requester to file a lawsuit when [twenty] days have passed without a reply from the agency indicating that it is responding to his request, but that this option lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies. Thus, if the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required.

*Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 61 (D.C.Cir.1990) (citations omitted).

any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination; and (ii) make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal

public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection. 5 U.S.C. § 552(a)(6)(A)(i) and (ii).

■ Mr. Scherer has not alleged that he appealed his FOIA request to the Secretary as contemplated by the Department's regulations.[13] As such, the Department correctly notes that he has not actually exhausted his administrative remedies. The question not addressed by the parties, however, is whether Mr. Scherer constructively exhausted his administrative remedies under FOIA. Mr. Scherer's allegations fail to clearly satisfy the constructive exhaustion requirement under FOIA. Mr. Scherer states that he requested these documents on November 18, 2001. On January 7, 2002, the Department produced the grant he requested, but failed to include the "assurances" he sought in the same request. As such, Mr. Scherer renewed his FOIA request for assurances on January 7, 2002. The complaint, however, fails to clarify whether Mr. Scherer actually received the assurances before filing suit. For example, Mr. Scherer alleges that "Ms. Cueva failed to timely produce those documents under the FOIA or produce those documents at all." On the other hand Mr. Scherer, alleges that on February 21, 2001, the department "wanted to ... fax the assurances that were not provided", but "*[r]egardless of production,* the FOIA violation does not disappear." (Emphasis added). In short, the court can not determine from Mr. Scherer's complaint whether or not the Department produced the requested assurances prior to the date he filed this action and, therefore, the court cannot apply the constructive exhaustion doctrine to Mr. Scherer's FOIA claim.[14] As such, the Department's motion to dismiss this claim under Rule 12(b)(1) is granted.

## 2. Punitive Damages under FOIA

■ The Department contends that even if the court had jurisdiction over the FOIA claims, Mr. Scherer fails to state a claim because Congress did not include monetary damages as part of FOIA's remedial scheme. The Department correctly notes that FOIA does not provide a private right of action for monetary damages. *Daniels v. St. Louis VA Regional Office,* 561 F.Supp. 250, 251 (E.D.Mo.1983); *Diamond v. FBI,* 532 F.Supp. 216, 233 (S.D.N.Y.1981), aff'd, 707 F.2d 75 (2d Cir.

13. In his response to the motion to dismiss, Mr. Scherer contends that he exhausted his administrative remedies based upon his numerous efforts to obtain the documents from Ms. Cueva, Adriene Payne and Tony Swetnam. Mr. Scherer also alleges in his complaint that he took the following actions to exhaust his administrative remedies: filing a "pending congressional complaint with Senator Pat Roberts", contacting "Governor Bob Holden requesting his review his appointment of a federal regulator to the Board of Curators", and requesting "staff of Senator Kit Bond to investigate" his complaint. Mr. Scherer believes that "for all practical purposes, he has exhausted administrative remedy [sic] in this case." While no one disputes Mr. Scherer's diligence in attempting to obtain the documents from governmental officials, his methods do not comport with the remedial process contemplated under FOIA and Department regulations.

14. Where "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him", the court will often permit the plaintiff leave to amend his complaint. *Mondragon,* 83 F.3d at 1202. However, because Mr. Scherer has also failed to state a claim under FOIA, as discussed fully in the next section, granting him leave to amend would be futile. In addition, Mr. Scherer alleges that he requested defendant Adriene Payne and defendant Tony Swetnam produce a copy of his administrative complaint and all documents related to the Department's investigation of that complaint. Mr. Scherer and the Department have not characterized this inquiry as a formal request under FOIA. While the court might have requested additional briefing on this issue under different circumstances, such a request would be futile here, where Mr. Scherer has failed to state a claim for relief.

1983), cert. denied, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984); *Gasparutti v. United States,* 22 F.Supp.2d 1114 (C.D.Cal.1998); *Soghomonian v. United States,* 82 F.Supp.2d 1134, 1147 n. 9 (E.D.Cal.1999); *Thompson v. Walbran,* 990 F.2d 403, 405 (8th Cir.1993). Instead, the remedy under FOIA is limited to "enjoin[ing] the agency from withholding agency records and to order[ing] the production of any agency records improperly withheld from the complainant." *Coolman v. I.R.S.,* 1999 WL 675319, at *7 (W.D.Mo. 1999) (quoting 5 U.S.C. § 552(a)(4)(B)).

■ Because Mr. Scherer is not entitled to punitive damages, the court grants the Department's motion to dismiss his FOIA claim under Rule 12(b)(6).[15] *Thompson v. Walbran,* 990 F.2d 403, 405 (8th Cir.1993) (granting motion to dismiss, without deciding whether plaintiff was actually entitled to documents, where plaintiff requested money damages and costs, but failed to request production of the documents).

### 3. FOIA Claim Against Department Officials

■ Finally, the Department argues that Mr. Scherer's FOIA claim against agency officials must be dismissed. Indeed, FOIA authorizes suit against federal agencies, but does not create a right of action against individual employees of the agency. *Thompson,* 990 F.2d at 405;

---

15. The Department contends that sovereign immunity bars Mr. Scherer's non-FOIA claims, but does not suggest that the doctrine applies to the FOIA claims. While the court agrees that the United States has waived its sovereign immunity under FOIA as to injunctive relief, attorney fees and costs, Congress did not include monetary damages as part of FOIA's remedial scheme. The court is bound to construe narrowly any waiver of sovereign immunity and must not extend the scope of the sovereign's consent beyond what Congress clearly expressed within FOIA. *Bradley v. United States ex rel. Veterans Admin.,* 951

---

*Sherwood Van Lines v. United States Dep't of Navy,* 732 F.Supp. 240, 241 (D.D.C.1990); *Weiss v. Sawyer,* 28 F.Supp.2d 1221, 1228 (W.D.Okla.1997). In light of this authority, had Mr. Scherer exhausted his administrative remedies and pursued an available remedy, his FOIA claims against Secretary Paige, Maria Cueva, Tony Swetnam, and Adrian Payne would be dismissed under Rule 12(b)(6).

In summary, the court grants the Department's motion to dismiss Mr. Scherer's claim under Rule 12(b)(1) for failure to exhaust his administrative remedies. The court grants the Department's motion to dismiss the FOIA claims as to all defendants under Rule 12(b)(6) because Mr. Scherer pursues a remedy that is not available under the Act. The court further grants the Department's motion to dismiss the claims as to the relevant individual defendants because FOIA does not provide a right of action against the Department's employees.

### B. Obstruction of Justice

In addition to the FOIA claim, Mr. Scherer contends that the Department's failure to produce the documents constitutes an obstruction of justice. The Department contends and Mr. Scherer has not refuted that he is attempting to state a claim under the federal obstruction of justice statute, 18 U.S.C. § 1503. The

---

F.2d 268, 270 (10th Cir.1991) (quoting *United States v. Kubrick,* 444 U.S. 111, 118, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (explaining that court should not extend waiver beyond that which Congress intended)). As such, the United States has not consented to suit for punitive damages under FOIA and the court lacks jurisdiction over Mr. Scherer's request for such relief against the Department of Education, Secretary Paige, and the employees in their official capacities. Accordingly, Mr. Scherer's FOIA claims against these defendants could also be dismissed under Rule 12(b)(1).

Department argues that the doctrine of sovereign immunity bars this claim against the Department of Education, Secretary Paige and the department employees in their official capacity.[16] The Department further contends that to the extent Mr. Scherer pursues this claim against the Department employees in their individual capacities, the court lacks personal jurisdiction over those individual defendants. Finally, the Department alleges that the federal obstruction of justice statute fails to provide Mr. Scherer with a private right of action.

### 1. Sovereign Immunity

■ Before turning to the merits of plaintiff's obstruction of justice claim, the court must first address the issue of immunity. *Frazier v. Simmons*, 254 F.3d 1247, 1252 (10th Cir.2001) (discussing immunity under the Eleventh Amendment, as opposed to federal sovereign immunity, but the rationale for prioritizing immunity issues remains the same under either doctrine). "[T]he defense of sovereign immunity is jurisdictional in nature." *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir.2002) (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)), and "generally shields the United States, its agencies, and officers acting in their official capacity from suit." *Id.* (citing *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Besides barring actions for money damages, sovereign immunity applies with equal force to actions for injunctive or declaratory relief. *United States v. Murdock*

*Mach. and Eng'g Co. of Utah*, 81 F.3d 922, 929 (10th Cir.1996); *see also Cabeza De Vaca Land & Cattle Co., L.L.C. v. Babbitt*, 58 F.Supp.2d 1226, 1230 (D.Colo.1999). Thus, Mr. Scherer "generally cannot pursue a suit against the Federal Government absent a congressional waiver of immunity." *Id.* (citing *Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 75 L.Ed.2d 840(1983)). The courts, however, recognize a narrow exception to the doctrine of sovereign immunity. "A court may regard a government officer's conduct as so 'illegal' as to permit a suit for specific relief against the officer as an individual if (1) the conduct is not within the officer's statutory powers or, (2) those powers, or their exercise in the particular case, are unconstitutional." *Wyoming*, 279 F.3d at 1225 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)).

The Department argues that the court lacks jurisdiction over Mr. Scherer's claim because it constitutes a suit against the sovereign. A judgment operates against the sovereign " 'if [it] would expend itself on the public treasury or domain, or interfere with the public administration,' or 'if the effect of the judgment would be to restrain the government from acting, or to compel it to act.' " *Puerto Rico Public Housing Admin. v. U.S. Dep't of Housing & Urban Dev.*, 59 F.Supp.2d 310, 321 (D.Puerto Rico 1999)(citing *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963)). In this action, Mr. Scherer has alleged that the Department of Education, Secretary Paige and various Department officials [17] obstructed justice.

**16.** Mr. Scherer named six officers of the Department of Education and other unnamed parties, all in their individual capacities. Given Mr. Scherer's pro se status and because the court ultimately finds that it lacks personal jurisdiction over the individual defendants in their individual capacity, the court feels

compelled to construe Mr. Scherer's complaint liberally by assuming that he intended to name these individuals in both their individual and official capacities.

**17.** As explained in greater detail below, the doctrine of sovereign immunity does not apply to defendants named in their individual

To remedy this alleged violation, Mr. Scherer seeks a judgment declaring that the Department obstructed justice by failing to produce the FOIA documents. As such, Mr. Scherer seeks a judgment against the United States and the doctrine of sovereign immunity bars this claim, unless it is subject to waiver or one of the limited exceptions to the doctrine.

 The United States has not waived its immunity under the federal obstruction of justice statute. While sovereign immunity does not apply when the sovereign consents to suit, such waivers are to be read narrowly, *James v. United States*, 970 F.2d 750, 753 (10th Cir.1992) (citations omitted), and the party bringing suit bears the burden of proving that sovereign immunity has been waived. *Id.* (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Mr. Scherer has failed to allege any waiver of sovereign immunity and the court's review of 18 U.S.C. § 1503 reveals that it contains none. Moreover, the United States has not waived its immunity generally with respect to declaratory judgment actions. *Wyoming*, 279 F.3d at 1225 (noting that general jurisdictional statutes such as 28 U.S.C. § 1331 or the declaratory judgment statute, 28 U.S.C. § 2201 do not waive the government's sovereign immunity).

Additionally, Mr. Scherer's allegations do not place his claims outside the doctrine of sovereign immunity. As stated above, even when the United States has not consented to suit, there are limited exceptions to the doctrine of sovereign immunity. "[T]he Supreme Court in Larson recognized an exception to the sovereign immunity doctrine in a suit for specific relief against the United States where a government official acted ultra vires or beyond

those powers Congress extended." *Wyoming*, 279 F.3d at 1229 (citing *Larson*, 337 U.S. at 689, 69 S.Ct. 1457). The Larson Court, however, emphasized "that application of the ultra vires exception to the sovereign immunity doctrine rested upon 'the officer's lack of delegated power,' or ... lack of statutory authority." *Id.* (quoting *Larson*, 337 U.S. at 690, 69 S.Ct. 1457). Based upon the Supreme Court's guidance, the Tenth Circuit has recognized that a plaintiff may not pierce the shield of sovereign immunity by merely alleging that officers acted wrongfully or erroneously:

> Therefore, an official's erroneous exercise of delegated power is insufficient to invoke the exception. Official action is not ultra vires or invalid if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so. Moreover, the mere allegation that an officer acted wrongfully does not establish that the officer, in committing the alleged wrong, was not exercising the powers delegated to him by the sovereign. If the officer is exercising such powers, the suit is in fact against the sovereign and may not proceed unless the sovereign has consented. Thus, the question of whether a government official acted ultra vires is quite different from the question of whether that same official acted erroneously or incorrectly as a matter of law.

*Id.* at 1229–30. While Mr. Scherer's complaint is replete with allegations of wrongful conduct, he does not suggest that any of the defendants acted ultra vires. In fact, Mr. Scherer's claim is based upon the manner in which the officials responded to the FOIA request. Congress has delegated to the Department and its officials the authority to respond to FOIA requests and these defendants were exercising this authority when they constructed their re-

---

capacity, but the court is construing Mr. Scherer's complaint liberally by assuming he

intended to sue the individuals in their official and individual capacity.

sponse to Mr. Scherer's request. As such, the limited exception to the doctrine of sovereign immunity does not apply to Mr. Scherer's obstruction of justice claim. *United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 548–49 (10th Cir. 2001) (noting that actions taken by agency were within its delegated authority and therefore not ultra vires, despite the plaintiff's assertion that the agency wrongfully reached its administrative decision).

Because the United States has not waived its immunity under the federal obstruction of justice claim and Mr. Scherer has failed to allege that the Department acted ultra vires, the doctrine of sovereign immunity bars his obstruction of justice claim against the Department of Education, Secretary Paige, and the agency employees in their official capacity.[18] As such, the court grants the Department's motion to dismiss this claim under Rule 12(b)(1).

## 2. Personal Jurisdiction over Defendants in their Individual Capacity

 Mr. Scherer named the employees of the Department of Education in their individual capacities. The doctrine of sovereign immunity does not apply to federal officials in this capacity. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Larson,* 337 U.S. at 689, 69 S.Ct. 1457; *Nurse v. United States,* 226 F.3d 996, 1004 (9th Cir.2000). However, "when a plaintiff proceeds against an agent of the government in his or her individual capacity, the plaintiff must effect personal service on that agent in compliance with Rule 4(d)(1)." *Despain v. Salt Lake Area Metro Gang Unit,* 13 F.3d 1436, 1438 (10th Cir.1994) (citing *Micklus v. Carlson,* 632 F.2d 227, 240 (3d Cir.1980); *Love v. Hayden,* 757 F.Supp. 1209, 1211 (D.Kan.1991); 4A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1107 at 163 (1987)).[19] Without personal service in accordance with Rule 4(e), the district court is without jurisdiction to render a personal judgment against a defendant. *Royal Lace Paper Works v. Pest–Guard Prod., Inc.,* 240 F.2d 814, 816 (5th Cir.1957).

 Rule 4(e) permits Mr. Scherer to serve the individual defendants either pur-

---

**18.** In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the court held that a party has a right of action for damages for constitutional violations caused by a federal official acting under color of his authority. As such, sovereign immunity would not apply to these individual defendants to the extent Mr. Scherer alleges a constitutional violation under the *Bivens* doctrine. Mr. Scherer has not pursued this theory nor made allegations that fall within the scope of the doctrine. Moreover, as the Department noted, if Mr. Scherer wanted to pursue a *Bivens* claim, he must do more than make conclusory allegations of a constitutional violation. The closest Mr. Scherer comes to stating such a violation in his complaint is when he alleges that "[t]he Department of Education and its various staff members and officers have failed to enforce the civil rights laws at the University of Missouri. In the

process they have violated Mr. Scherer's and others civil rights." Such conclusory allegations are insufficient to state a constitutional claim under *Bivens. Blinder, Robinson & Co., v. SEC,* 748 F.2d 1415, 1419 (10th Cir.1984), cert. denied 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985). While Mr. Scherer contends that the Department violated his due process rights by failing to produce the requested documents, those allegations were made in his response to the motion to dismiss and are not present in his complaint.

**19.** Prior to 1993, the rule for service upon an individual was contained at Rule 4(d)(1). In 1993, the rule was amended and service upon an individual is now governed by Rule 4(e)(1) and (2). While paragraph (2) retained the text of the former subdivision (d)(1), paragraph (e)(1) authorized service in any judicial district in conformity with state law.

suant to the law of the state in which the district court is located, Fed R. Civ. P. 4(e)(1), or by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode. Fed.R.Civ.P. 4(e)(2). Here, Mr. Scherer served the Department employees by certified mail at their work address. This method fails to satisfy Rule 4(e)(1) because Kansas law requires that "[s]ervice by certified mail shall be addressed to an individual at the individual's dwelling house or usual place of abode." K.S.A. § 60–304(a). For the same reason, this method also fails to satisfy Rule 4(e)(2). While Mr. Scherer's method was proper for serving federal employees in their official capacities, it does not satisfy the requirements for service upon them in their individual capacities. As such, the court must dismiss Mr. Scherer's obstruction of justice claim, and for that matter all other claims against the Department officials in their individual capacities, under Rule 12(b)(2). *Bartels v. Hecker*, 46 F.3d 1150, 1995 WL 24911, at *2 (10th Cir.1995) (finding district court properly dismissed defendant in his individual capacity, despite the fact that he was properly before the court in his official capacity, because Rule 4(d)(1) of the Federal Rules of Civil Procedure expressly requires personal service when a defendant is named individually).

### 3. Private Right of Action under the Federal Obstruction of Justice Statute

 In addition to its jurisdictional challenges, the Department contends that Mr. Scherer fails to state a claim under the federal obstruction of justice statute because it does not provide a private right of action. The Department is correct. Federal courts have consistently denied a private civil right of action under 18 U.S.C. § 1503, the criminal statute against jury tampering, witness intimidation, and obstruction of justice. *OMI Holdings, Inc. v. Howell*, 864 F.Supp. 1046, 1048 (D.Kan. 1994) (citing *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir.1960) cert. denied, 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747; *Odell v. Humble Oil & Refining Co.*, 201 F.2d 123, 127 (10th Cir.) cert. denied, 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367 (1953); *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 807 (D.Utah 1988); *Harberson v. Hilton Hotels*, 616 F.Supp. 864, 866 (D.Colo.1985); *Burch v. Snider*, 461 F.Supp. 598, 602 (D.Md.1978); *Mainelli v. Providence Journal Co.*, 207 F.Supp. 453, 456 (D.R.I.) aff'd in part and vacated in part on other grounds, 312 F.2d 3 (1st Cir.1962)); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir.1997); *James v. McCoy*, 56 F.Supp.2d 919, 935 (S.D.Ohio 1998).

Therefore, even if the court had subject matter jurisdiction over Mr. Scherer's obstruction claim and personal jurisdiction over the defendants in their individual capacity, Mr. Scherer has no private right of action under the statute and the claim must be dismissed under Rule 12(b)(6).

### C. Federal Ethical Standards of Conduct

Apart from the claims based upon the document requests, Mr. Scherer contends that Angela Bennett violated federal standards of conduct and Presidential Executive Orders by serving both as a board member of the Curators of the University of Missouri and the Director of the OCR for Region VII. The Department contends that to the extent Mr. Scherer pursues this claim against the Department employees in their individual capacity, the court lacks personal jurisdiction over those individual defendants. The Department further argues that the doctrine of sovereign immu-

nity bars this claim against the Department of Education, Secretary Paige and the department employees in their official capacity. Finally, the Department alleges that these ethics provisions fail to provide Mr. Scherer with a private right of action.

### 1. Personal Jurisdiction

As noted in the previous section, Mr. Scherer failed to personally serve the individual defendants. To the extent that he seeks to sue Ms. Bennett in her individual capacity for violating applicable ethical guidelines, his claim must be dismissed for lack of personal jurisdiction.

### 2. Sovereign Immunity

To remedy these alleged ethical violations, Mr. Scherer requests an injunction requiring the Region VII office of OCR to conduct an investigation into the five fold increase in federal funds to the Curators of the University of Missouri and an injunction requiring the Department of Education to conduct an internal investigation into the alleged ethical violations. To this extent, Mr. Scherer seeks an order against the United States and the doctrine of sovereign immunity bars the claim, absent waiver or an applicable exception.

The United States has not waived its sovereign immunity under any of the ethical standards that govern the conduct of the Department of Education and its employees. Mr. Scherer alleges that defendant Angela Bennett violated an unspecified Presidential Executive Order. In his response to the motion to dismiss, Mr. Scherer specifies that the conduct violates Executive Order 12674. This order prohibits employees from holding financial interests that conflict with the conscientious performance of duty, but it contains no express waiver of sovereign immunity. Additionally, the United States has not waived its immunity under any of the oth-

er ethical guidelines regulating the Department's conduct. The Department contends and Mr. Scherer does not dispute that its conduct is regulated by: (1) the Ethics in Government, codified at 5 U.S.C.App. 4; (2) the Office of Government Ethic's regulations, promulgated at 5 C.F.R. § 2634, et al.; (3) Department of Education regulations supplementing the Ethics in Government act, promulgated at 5 C.F.R. § 6301; and (4) the criminal conflict-of-interest standard, codified at 18 U.S.C. § 208. None of these statutes or regulations explicitly waive the immunity of the sovereign.

It is less certain, however, whether Mr. Scherer's allegations place Ms. Bennett's conduct outside the protections of sovereign immunity. Based upon Mr. Scherer's allegations, Ms. Bennett's delegated authority is limited by the applicable ethical provisions. Mr. Scherer implicitly argues that by violating these ethical provisions, Ms. Bennett has necessarily acted ultra vires. The court need not reach the issue, however, because none of the applicable ethical guidelines provide Mr. Scherer with a private right of action.

### 3. Private Right of Action under Ethical Guidelines

The Department argues that even if Ms. Bennett violated the applicable ethics guidelines they do not provide him with an express or implied right of action. After reviewing the applicable guidelines, the court agrees that Mr. Scherer has no private right of action under these standards of conduct.

To decide whether a private right of action is available under a statute, the court must decide "whether Congress, expressly or by implication, intended to create a private cause of action." *Sonnenfeld v. Denver*, 100 F.3d 744, 747 (10th Cir. 1996). The Tenth Circuit has cautioned

that the court "must exercise great care in finding an implied right of action." *Davis–Warren Auctioneers, J.V. v. F.D.I.C.,* 215 F.3d 1159, 1162 (10th Cir.2000) (citing *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 291, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993)). "A plaintiff asserting an implied right of action under a federal statute bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the statute." *Casas v. Am. Airlines, Inc.,* 304 F.3d 517, 521–22 (5th Cir.2002). "In other words, he [or she] must overcome the familiar presumption that Congress did not intend to create a private right of action." *Id.* at 522.

As noted above, the ethical provisions relevant to this action include: (1) the Ethics in Government Act, codified at 5 U.S.C.App. 4; (2) the Office of Government Ethic's regulations, promulgated at 5 C.F.R. § 2634, et al.; (3) Department of Education regulations supplementing the Ethics in Government act, promulgated at 5 C.F.R. § 6301; (4) the criminal conflict-of-interest standard, codified at 18 U.S.C. § 208, and (5) Executive Order 12674.[20] The court reviews each of these provisions to determine whether Mr. Scherer is entitled to bring a civil action thereunder.

### a. Ethics in Government Act of 1978

▬ The Ethics in Government provisions, codified at 5 U.S.C.App. 4, governs the conduct of Department employees. The Act, however, does not provide an express or implied private right of action. Only the Attorney General has an express right of action under the Act. The relevant enforcement provision provides as follows:

(a) Civil action.—The Attorney General may bring a civil action in any appropriate United States district court against any individual who violates any provision of section 501 or 502. The court in which such action is brought may assess against such individual a civil penalty of not more than $10,000 or the amount of compensation, if any, which the individual received for the prohibited conduct, whichever is greater.

5 U.S.C.App. 4 § 504. Moreover, there is no evidence that Congress intended to create a private right of action under the Act. In fact, this "title is *subject to the rules and regulations of . . . the Office of Government Ethics* and administered by designated agency ethics officials with respect to officers and employees of the executive branch." 5 U.S.C.App. 4 § 503(2) (emphasis added). As discussed below, the Office of Government Ethic's implementing regulations preclude a private right of action under those provisions. As such, Mr. Scherer has failed to state a claim under the Act and any claim thereunder must be dismissed under Rule 12(b)(6).

### b. Office of Government Ethics Regulations

The Office of Government Ethics has promulgated regulations that implement the Ethics in Government Act at 5 C.F.R. § 2634 *et seq* (the "Standards of Ethical Conduct for Employees of the Executive Branch"). The Office of Government Ethics has made clear that these regulations create no private right of action against federal employees. Section § 2635.106 provides that "[a] violation of this part or of supplemental agency regulations, as such, does not create any right or benefit,

---

**20.** It is worth noting that Mr. Scherer did not allege violations of these specific provisions. Instead, he generally alleges that Ms. Bennett has violated unspecified ethics provisions and Executive Orders. The court and the Department have taken the initiative of construing his complaint broadly to analyze whether his allegations state a claim under these provisions.

substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person." 5 C.F.R. § 2635.106(c). As such, the implementing regulations do not provide Mr. Scherer with a private right of action and any claim under these regulations must be dismissed under Rule 12(b)(6).

### c. Supplemental Standards of Ethical Conduct

The Supplemental Standards of Ethical Conduct for Employees of the Department of Education "apply to employees of the Department of Education and supplement the Standards of Ethical Conduct for Employees of the Executive Branch contained in 5 CFR part 2635." 5 C.F.R. § 6301.101. These regulations contain no express private right of action. Moreover, the Standards of Ethical Conduct for Employees of the Executive Branch provide that neither those regulations nor the provisions "*of supplemental agency regulations . . .* create any right or benefit, substantive or procedural, enforceable at law ..." 5 C.F.R. § 2635.106(c) (emphasis added).

As such, Mr. Scherer has no right of action under the Department's supplemental standards and any claim based upon these standards must be dismissed under Rule 12(b)(6).

### d. Criminal Conflict of interest statute 18 U.S.C. § 208

 The criminal conflict of interest standard also governs Ms. Bennett's conduct. The only right of action under this provision, however, is reserved for the Attorney General. Subsection (b) and (c) of the statute entitles the Attorney General to bring a civil penalty or injunctive action. 18 U.S.C. § 208(b). While the imposition of a civil penalty "does not preclude any other criminal or civil statutory, common

law, or administrative remedy, which is available by law to the United States or any other person," it does not create an independent private right of action. *Ray v. Proxmire,* 581 F.2d 998, 1001 (D.C.Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978) (upholding 12(b)(6) dismissal of claim brought under 18 U.S.C. § 201 because "bare criminal statute" provides no private cause of action). The courts have also refused to recognize an implied right of action under the statute. *Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 5 (D.D.C.1995) (dismissing claim under 12(b)(6) because statute provided no private right of action); *Saratoga Sav. and Loan Ass'n v. Fed. Home Loan Bank of San Francisco,* 724 F.Supp. 683, 690 (N.D.Cal.1989) (no private right of action). The court agrees with the reasoning of these courts and joins them in concluding that the federal conflict of interest statute provides no express or implied private right of action. As such, Mr. Scherer's claims under this statute must be dismissed under Rule 12(b)(6).

### e. Executive Order 12674

 Executive Order 12674 provides for certain standards of conduct for executive branch employees. The Order does not expressly create a right of action. Mr. Scherer has offered no evidence suggesting that the President intended to create an implied right of action and the court has found no such evidence in its independent review of the order. As such, Mr. Scherer has failed to overcome the relatively heavy presumption that the government did not intend to create a private right of action and, therefore, has failed to state a claim under the executive order.

### D. Failure to Enforce Civil Rights Legislation

Finally, Mr. Scherer alleges that the Department has failed to investigate ade-

quately his administrative complaint. Mr. Scherer also makes a conclusory allegation that the Department has failed to enforce applicable civil rights legislation against the University of Missouri. To cure these alleged deficiencies, Mr. Scherer seeks an injunction requiring the Department to enforce all federal civil rights statutes and to revoke funding to the Curators of the University of Missouri until they can produce affirmative evidence demonstrating compliance with these acts. In its motion to dismiss, the Department contends that to the extent Mr. Scherer pursues this claim against the Department employees in their individual capacity, the court lacks personal jurisdiction over those individual defendants. The Department further argues that the doctrine of sovereign immunity bars this claim against the Department of Education, Secretary Paige and the department employees in their official capacity. Finally, the Department believes that Mr. Scherer has no private right of action against the funding agency.

## 1. Personal Jurisdiction

As noted in the previous section, Mr. Scherer failed to personally serve the individual defendants and the court lacks personal jurisdiction over these parties.

## 2. Sovereign Immunity

To adequately address the sovereignty issue, the court must determine whether the federal civil rights statutes or the Administrative Procedure Act ("APA") creates an express or implied right of action against the federal funding agency.[21] As such, the court must turn to whether Mr. Scherer has a statutory or implied right of action directly against the Department.

## 3. Private Right of Action against the Federal Funding Agency

■ As previously discussed, the Department of Education is responsible for enforcing Title VI, Section 504 of the Rehabilitation Act and the ADA against educational institutions that receive federal funding. Liberally interpreting Mr. Scherer's complaint, he alleges that the Department has failed to adequately investigate his discrimination complaint and enforce these civil rights statutes. While Mr. Scherer, assuming he has standing, has an implied right of action against recipients of federal funds who violate these civil rights statutes, he does not have a private right of action against the funding agency, the Department in this case. To reach this conclusion, the court must examine whether Mr. Scherer has a statutory basis for judicial review of the agency conduct or a right of action under the APA.

### a. Right of Action under the Statutes

The focal point of the court's analysis is on Title VI because the remedial schemes of both Section 504 and the ADA are tied to the remedies available under Title VI.[22]

---

21. For example, if Mr. Scherer has a right to compel the Department to initiate further investigations or enforce the applicable civil rights legislation under the APA, section 702 waives sovereign immunity as to injunctive relief against administrative agencies. *Wyoming*, 279 F.3d at 1236 (noting that "Section 702 generally waives the sovereign immunity of the United States, its agencies, and officials in agency review actions seeking specific relief").

22. Section 504 was modeled upon Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. *Sch. Bd. of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 1126 n. 2, 94 L.Ed.2d 307 (1987). Courts often construe section 504 with reference to Titles VI and IX. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir.1999). In fact, in 1978 Congress amended section 505 of the Act to

Title VI prohibits federal exclusion from participation in, denial of benefits of, and discrimination under any federally-assisted program on account of race or national origin. Justice Ginsburg aptly described the administrative enforcement component of Title VI:

> The statute directs each federal agency that disburses federal funds to "effectuate" the antidiscrimination mandate. If compliance cannot be secured by voluntary means, Title VI instructs the agency to initiate a process leading to the termination of or refusal to grant or to continue [federal monetary] assistance. *http://www.westlaw. com/Find/Default.wl?rs=1.0&vr=2.0& DB=1000546&DocName=42USCAS 2000D–1&FindType=L* Under a complaint procedure devised by the Department, individuals may file administrative complaints identifying allegedly noncomplying aid recipients. If the agency (OCR, now placed in the Department of Education) investigates and determines the complaint to be meritorious, the agency is then directed to undertake various compliance efforts, potentially culminating in the ultimate sanction of fund termination. *Document1zzFN F0011*

*Women's Equity Action League v. Cavazos*, 906 F.2d 742, 745 (D.C.Cir.1990) (internal citations omitted). In addition to administrative enforcement of the civil rights statutes, the Supreme Court has held that victims of discriminatory practices have an implied right of action against the discriminating recipients of

federal funds. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688–89, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

The *Cannon* Court, however, suggested that no such right exists against the funding agency. After reviewing Title VI's legislative history the court explained that Congress' final version of the Act reflected "a compromise aimed at protecting individual rights without subjecting the Government to suits." *Id.* at 715, 99 S.Ct. 1946. The court concluded that a private right of action against the funding agency would be "far more disruptive" of the agency's efforts to ensure compliance than a "private suit against the recipient of the federal aid could ever be." *Id.* at 706 n. 41, 99 S.Ct. 1946. These comments suggest that Mr. Scherer has no implied right of action against the funding agency. Indeed, since *Cannon*, federal courts have generally held that plaintiffs do not have a right of action against the funding agency to compel them to enforce the civil rights statutes. *Document1zzFN F0088 Women's Equity Action League*, 906 F.2d at 749 (citing *NAACP v. Medical Center, Inc., 599 F.2d 1247, 1254 n. 27 (3d Cir.1979); Cousins v. United States Dep't of Transp., 880 F.2d 603, 607 (1st Cir.1989); Marlow v. United States Dep't of Ed., 820 F.2d 581, 583 (2d Cir. 1987)*, cert. denied, 484 U.S. 1044, 108 S.Ct. 780, 98 L.Ed.2d 866 (1988); *Salvador v. Bennett, 800 F.2d 97, 99 (7th Cir.1986))*; see also *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir.1999)(finding no express right of action under Title VI and refusing to recognize an implied right under the Act).[23]

specify that the enforcement scheme of Title VI governs § 504. 29 U.S.C. § 794a(a)(2). Similarly, the ADA specifically incorporates the remedies, procedures, and rights available under § 504 of the Rehabilitation Act, 42 U.S.C. § 12133, and the courts construe the ADA with reference to § 504. *Patton v. TIC*

*United Corp.*, 77 F.3d 1235, 1245 (10th Cir. 1996).

**23.** Some courts have permitted actions directly against the funding agency, but only in "narrow circumstances involving allegations that the agency has consciously and expressly abdicated its enforcement duties, that the

The court believes that the Tenth Circuit would embrace the reasoning of these courts and likewise deny Mr. Scherer a right of action against the Department, based upon its unpublished opinion in *Renteria v. Donahue*, 92 F.3d 1197, 1996 WL 446905 (10th Cir.1996), cert. denied 522 U.S. 897, 118 S.Ct. 241, 139 L.Ed.2d 171 (1997). In *Renteria*, the plaintiff brought a pro se action against officials of the Region VII Office for Civil Rights, United States Department of Education, after OCR closed her administrative complaint in which she alleged that Wichita State University had discriminated against her while she was a student in various classes. *Id.* at *1, 92 F.3d 1197. After reviewing the district court's opinion dismissing the action, the Tenth Circuit agreed that Ms. Renteria had no private right of action directly against the agency under Title VI. *Id.* at *2, 92 F.3d 1197. Mr. Scherer is similarly situated to Ms. Renteria in that he seeks a remedy for the Department's alleged failure to adequately investigate his complaint and enforce applicable civil rights statutes. As such, the court is convinced that he, just as Ms. Renteria, has no private right of action against the Department under Title VI.

**b. Implied Right of Action under the Administrative Procedure Act**

Absent a right of action under the civil rights statutes, the question is whether the APA provides a right of action requiring

agencies to enforce the applicable civil rights statutes.

Section 702 of the APA generally authorizes suits against government agencies for relief other than money damages. 5 U.S.C. § 702. A suit under Section 702 however, is available only when "there is no other adequate remedy in a court. . . ." *5 U.S.C. 704*. Federal courts have held that victims of discrimination have an adequate remedy to redress discrimination in the form of an implied right of action directly against the discriminating institution and that this remedy forecloses any right of action against the funding agency under the APA. *http://www. westlaw.com/Find/Default.wl?rs=1.0&vr =2.0&DB=350&FindType=Y&Reference PositionType=S&SerialNum= 1990098945&ReferencePosition=748 Washington Legal Foundation v. Alexander*, 984 F.2d 483, 486 (D.C.Cir.1993); *Women's Equity Action League*, 906 F.2d at 751; *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 191–92 (4th Cir.1999).

 Again, the court believes that the Tenth Circuit would adopt the same position based upon its unpublished opinion in *Renteria*. Therein, the court affirmed the district court's finding that the plaintiff had no right of action, under the APA, against the Department of Education. 92 F.3d 1197, 1996 WL 446905, at *2. Likewise, Mr. Scherer has no right of action

agency is using improper procedures for approving funded programs, that it acquiesced or actively participated in discriminatory practices, or that it has wrongly refused to pursue further action when efforts to achieve voluntary compliance have failed." *Marlow*, 820 F.2d at 583 (internal citations omitted). It is unclear, however, whether these narrow exceptions are still applicable in light of the Supreme Court's guidance in *Cannon*. Nevertheless, the court need not decide that issue because Mr. Scherer's complaint contains

only one conclusory allegation that "[t]he Department of Education and its various staff members and officers have failed to enforce the civil rights laws at the University of Missouri." As a result, Mr. Scherer concludes that "they have violated [his] and others civil rights." Even assuming that the narrow line of cases permitting direct actions against the funding agency remain valid in the post-*Cannon* era, Mr. Scherer's conclusory allegations are insufficient to place his complaint within the scope of those decisions.

under the APA to force the Department to investigate further his administrative complaint or enforce Title VI, Section 504 of the Rehabilitation Act, or the ADA against the University of Missouri. Instead, Mr. Scherer's remedy lies with an action directly against the discriminatory recipient of federal funds.[24] As such, the court denies Mr. Scherer's claims founded upon an express or implied right of action under the civil rights statutes or the APA under Rule 12(b)(6).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss (Doc. 38) is granted and Mr. Scherer's complaint is dismissed in its entirety. Specifically, the court grants the motion as to Mr. Scherer's FOIA claims under Rule 12(b)(1) for failing to exhaust his administrative remedies and under Rule 12(b)(6) because his requested remedy is not available under the statute. The court further dismisses his FOIA claims against the individual defendants under Rule 12(b)(6) because FOIA provides a right of action against the agency, not its officers. The court grants the motion as to Mr. Scherer's non-FOIA claims under Rule 12(b)(6) in their entirety because none of the relevant statutes, regulations or executive orders provides him with a private right of action. Moreover, the court grants the Department's motion to dismiss the obstruction of justice claim against all federal agencies and employees in their official capacity under Rule 12(b)(1) because the doctrine of sovereign immunity bars such claims. Finally, the court dismisses all claims against the individual defendants in their individual capacity under Rule 12(b)(2) because Mr. Scherer failed to serve them in conformity with Rule 4(e) and the court lacks personal

24. In fact, Mr. Scherer has utilized this remedy by suing the allegedly discriminating insti-

jurisdiction over the defendants in that capacity.

tution in the United States District Court for the Western District of Missouri.